WILLIAM DUCHEMIN *vs.* BOSTON ELEVATED RAILWAY
COMPANY.

Suffolk.   January 15, 1903. — September 7, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Street Railway.   Carrier,* Of passengers.   *Negligence,* On highway.

A foot traveller on a highway who is approaching and intending to board a street
car, which in response to a signal from him has stopped to receive him, is not
a passenger on the car before he reaches it, and until he begins to enter the car
the company operating it owes him only the duty which it owes to all persons
lawfully upon the street.

TORT for injuries caused by the trolley pole and a sign of a
car of the defendant falling upon the plaintiff, as he was about
to enter the car.   Writ dated September 5, 1900.

At the trial in the Superior Court *Bell,* J. refused to make
the rulings requested by the defendant which are stated in the
opinion, and gave other instructions which also are stated in
the opinion.   The jury returned a verdict for the plaintiff in the
sum of $5,400, from which the plaintiff by requirement of the
judge afterwards remitted $1,400.   The defendant alleged ex-
ceptions.

*C. F. Choate, Jr.,* for the defendant.

*A. H. Russell,* for the plaintiff.

BARKER, J.   The action is for a personal injury occasioned
by the fall of a trolley pole and car sign.   The case stated in the
declaration is that as the car approached the plaintiff he went
toward it for the purpose of entering it having given the motor-
man in control notice of his intention so to become a passenger,
and that as he was about to get on the car the trolley pole fell
striking a sign upon the car and the pole and sign struck the
plaintiff, he being in the exercise of due care and the defendant
negligent.

At the trial the testimony of the plaintiff and of one passenger
on the car tended to show that when the pole and sign fell the
car was stationary, and the plaintiff in the act of boarding it,
having either one foot or both feet on the running board.

On the other hand the testimony of one passenger who was called as a witness by the plaintiff and of seven other persons who were on or near the car and were called as witnesses on the part of the defendant tended to show that when the pole and sign fell the car was not stationary, but was going slowly around a curve at a street corner, where there was a cross walk.   Of these seven the motorman testified that he did not see the plaintiff until after the fall of the pole and sign, and that the plaintiff was then standing on the cross walk within three or four feet of the car.   The conductor testified that he saw nobody in the act of getting on.   That he saw the plaintiff struck by the sign and that after being struck the plaintiff was from three to five feet from the car.   Two others of the defendant's witnesses, policemen of Cambridge, testified that they were together standing on the street within a few feet of the plaintiff, who was standing on the cross walk as though waiting for the car to go by, and that he made no movement or attempt to get on the car.   The other three witnesses for the defendant were passengers on the car and testified that they saw no one attempting to get on the car. Eight witnesses in all testified that the car was in motion around the curve when the accident occurred.

The defendant requested the judge to instruct the jury (1) that the plaintiff was not a passenger and that the defendant did not owe him the degree of care owed to passengers, and (2) that the defendant was required to exercise only that degree of care towards the plaintiff which a reasonably prudent person would exercise under the same circumstances.   The judge instructed the jury in substance that a person desiring to ride upon a street car may have the rights of a passenger before he actually takes his place upon the car; that where he has signalled the motorman to stop and the motorman has stopped to receive him, thereby making an offer to be received and an acceptance of that offer, he is entitled to the rights and protection of a passenger as he approaches that car to get upon it, at least so far as any defect in that car is concerned.

After a verdict for the plaintiff the case is before us upon the defendant's exception to the refusal of the judge to give the rulings requested, and upon an exception to the portions of the charge which stated that a person may have the rights of a

passenger as he approaches a street car and the degree of care owed to a person under those circumstances. The tenor of the parts of the charge so excepted to was as follows:

"Now, gentlemen, I want to say before I go into the evidence — to explain what I said I would explain about being a passenger. A man becomes a passenger, or at least it may be a more accurate way to say that he has the rights of a passenger, before he actually takes his place upon the car. He may do so. A man who comes to a steam railroad which has depots, when he has bought his ticket and as he is approaching the car, may have all the rights of a passenger, although he has not yet reached the car or taken his seat upon it. And the person desiring to ride upon the street car, where he has signalled the motorman to stop, and the motorman has stopped to receive him, thereby making an offer to be received and an acceptance of that offer — he is entitled to the rights and protection of a passenger as he approaches that car to get upon it; at least, so far as any defect in that car is concerned. He is within his rights and within the contract under those circumstances as he approaches that car, for instance, if anything falls, as in this case, from the car and strikes him."

"They owed him the duty to use the highest degree of care which is reasonably practical in running such a road; the utmost care which is consistent with the nature and extent of the business in which it is engaged, and such as a prudent man would use to guard them against every possible contingency — every possible danger, so far as it was practicable. They are not an insurer, but they owe a good deal more than the ordinary degree of care. A passenger entrusts his person, sometimes his life, to these companies, and is obliged to trust them for the precautions which shall be used for it; and the law has been long settled that he is entitled to call upon them, as I have said, for the highest practical degree of care in executing such an enterprise as running a street railway. That they must do for him, and the question is whether they failed in that duty, because in the failure of that duty is the plaintiff's case. If they performed that duty they owe no further liability to the plaintiff. He may have been injured by one of those inevitable accidents for which no remedy exists, and which we all have to bear as they come to us in the course of human life."

It should be noted that in the charge the jury were instructed that the suit was not brought as in the right of a person upon the street; that the standards of care are quite different in the case of a passer-by upon a street struck by apparatus falling from a car, and that if the plaintiff had not become a passenger he could not recover. We assume that this portion of the charge was understood to mean, that, if the car had not stopped to receive the plaintiff, or, if he was attempting to go to it or to board it when it had stopped for some other purpose than to receive passengers and he had made to those in charge of the car no sign that he intended to take the car or had received from them in return no indication of assent to such a signal, or if he was attempting to reach or board the car while it was yet in motion, he could not recover.

This leaves as the turning point of the case the question whether a foot traveller on the highway who is approaching a street car stopped to receive him as a passenger, and before he actually has reached the car, is entitled to the rights of a passenger in respect of that extraordinary degree of care due to passengers from common carriers, at least so far as any defect in that car is concerned.

In other words the question is whether the jury should have been instructed that the defendant owed to the plaintiff the same high degree of care while he was approaching the car and had not yet reached it that it would owe to a passenger.

It is apparent that a person in such a situation is not in fact a passenger. He has not entered upon the premises of the carrier, as has a person who has gone upon the grounds of a steam railroad for the purpose of taking a train. He is upon a public highway where he has a clear right to be independently of his intention to become a passenger. He has as yet done nothing which enables the carrier to demand of him a fare, or in any way to control his actions. He is at liberty to advance or recede. He may change his mind and not become a passenger. Certainly the carrier owes him no other duty to keep the pavement smooth or the street clear of obstructions to his progress than it owes to all other travellers on the highway. It is under no obligation to see that he is not assaulted, or run into by vehicles or travellers, or not insulted or otherwise mistreated by other persons present.

Nor do we think that as to such a person, who has not yet reached the car, there is any other duty as to the car itself than that which the carrier owes to all persons lawfully upon the street.   There is no sound distinction as to the diligence due from the carrier between the case of a person who has just dismounted from a street car and that of one who is about to take the car but has not yet reached it.   In the case of each the only logical test to determine the degree of care which the person is entitled to have exercised by the street railway company is whether the person actually is a passenger, or is a mere traveller on the highway.   We think that a present intention of becoming a passenger as soon as he can reach the car neither makes the person who is approaching the car with that intention a passenger, nor changes as to him the degree of care to be exercised in respect of its cars as vehicles to be used upon a public way with due regard to the use of the same way by others.

The defendant incurs no responsibility to exercise extraordinary diligence by making an express contract, but only by its exercise of the calling of a common carrier, and its obligation as such does not arise until the intending passenger is within its control.   We are unwilling to go farther than the doctrine stated in *Davey* v. *Greenfield & Turner's Falls Street Railway*, 177 Mass. 106, that when there has been an invitation on the part of the carrier by stopping for the reception of a passenger any person actually taking hold of the car and beginning to enter it is a passenger.   See *Gordon* v. *West End Street Railway*, 175 Mass. 181, 183, and cases cited.

If the instructions allowed the jury to find for the plaintiff only in case the car had reached a usual stopping place and had stopped to receive him, there was error in ruling that under those circumstances and before he had actually reached the car he had a right to have the defendant exercise as to him that extraordinary degree of care due to passengers.   So long as he remained a mere traveller on the highway, although walking upon it for the sole purpose of taking the car, the defendant did not owe him any other duty than that which it owed to any person on the highway.   Whether one just has dismounted from a street car, or just is about to board one he does not have the rights of a passenger.

*Exceptions sustained.*