# JAQUETTE *v.* CAPITAL TRACTION COMPANY.

PLEADING; COMMON CARRIERS; RAILROADS; NEGLIGENCE; RES IPSA LOQUITUR.

1. In a declaration against a common carrier for injuries to the plaintiff while a passenger, it is sufficient to charge in general terms that the plaintiff was injured while boarding car as a passenger, as a result of the defendant's negligence, but, if specific acts of negligence are alleged, they must be proved.

2. One who, while attempting to cross in front of a street car at rest and receiving passengers in a city street, for the purpose of entering it, trips on the fender and is injured, cannot be said to have been a passenger at the time, and, not being a passenger, the company is bound to use reasonable care only to prevent injuring him.

3. Pedestrians are charged with knowledge of the fact that every street car or train in the District of Columbia is equipped in front with a suspended fender, to be operated by the motorman when the moving car comes in contact with persons or obstacles on the track, and a street railway company is not liable for injuries received by a pedestrian who, in daylight, trips over a properly constructed suspended fender of a standing car, while attempting to cross in front of the car.

4. Before the rule of *res ipsa loquitur* can be applied, a condition must be found existing which presupposes negligence on the part of the person sought to be charged.

5. Companies operating public utilities are entitled to the same protection at the hands of the courts as the law affords individuals.

**No. 1992.** Submitted October 20, 1909. Decided November 2, 1909.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia on a verdict directed by the court in an action to recover damages for alleged personal injuries. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an action upon the case for negligence brought by the appellant, Mary A. Jaquette, plaintiff below, as executrix of Isaac G. Jaquette, against the appellee, Capital Traction Company.

The declaration alleges that, while the deceased was a passenger on a car of appellee company on December 25, 1906, he was injured, from which injuries he subsequently died. It is alleged that, at the time of the accident, a north-bound train of appellee was standing on the track at Fifteenth street between G street and New York avenue northwest, in the city of Washington, at the regular place for discharging and receiving passengers. At the same time and place there was a south-bound train standing on the adjoining track, immediately alongside of and concealed by the north-bound train from the view of persons on the east side of said Fifteenth street. The fender on the front of the south-bound train projected beyond the rear of the north-bound train, and was suspended from the ground a distance of between 6 inches and 1 foot. The deceased attempted to reach and board the south-bound train from the east side of the street. The allegation of negligence is as follows: "That the said Isaac G. Jaquette, deceased, purposing and intending to take passage on one of the defendant's cars going south, passed over said east track at the rear of said north-bound car, and proceeded to cross said west track when, to wit: the conductor, agent, or servant of said defendant, on said Fourteenth street car, recklessly and without due and proper care and caution, and without regard to the safety of plaintiff's testator, rang the go-ahead bell or signal to start the said car; and as plaintiff's testator, the said Isaac G. Jaquette, in the exercise of proper caution, prudence, and care, for his self-preservation, endeavored to escape from in front of said Fourteenth street car, the said Isaac G. Jaquette was tripped up by said unfit, inadequate, and unsafe 'fender' negligently extended, and operated, in front of said car, as aforesaid, and was thrown violently against said car and fender, and to the pavement and

car track, and was seriously and fatally injured, his left leg being fractured at or near the hip joint, and other injuries thereby sustained and resulting; and but for said reckless, negligent, careless, and improper maintenance, operation, and use of said unfit and unsafe fender, extending in front of said car as aforesaid, while standing as aforesaid, said Isaac G. Jaquette would not have been so tripped and thrown, and injured as aforesaid." When appellant had introduced her evidence and rested her case, counsel for appellee moved the court to direct the jury to return a verdict for appellee. This motion was granted, and a verdict was so rendered. From the judgment thereon, this appeal was taken.

*Mr. Richard P. Evans* for the appellant.

*Mr. R. Ross Perry, Mr. R. Ross Perry, Jr.,* and *Mr. G. Thomas Dunlop* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The evidence discloses that, at the time of the accident, the car in question was standing still, and that the fender was neither defectively adjusted nor in a defective condition. Appellant's evidence also disclosed that the fender was what is known as a Parmenter fender, the use of which, at the time of the accident, was authorized and directed by a police regulation of the District of Columbia. The material sections of the regulations are as follows:

"17. Every motor car operated in the District of Columbia shall be fully equipped with front pick-up fenders of the Blackistone, Claude, Tobe, Preusser, or Parmenter pattern, and with wheel-guard fenders of the Brightwood automatic, the Blackistone, the Eldridge Smith, the Tobe, or the Parmenter improved pattern; provided, that any street railway company may substitute for the above any other fender or wheel guard which may hereafter be approved by the Commissioners of the District of Columbia; provided, further, that the details of con-

struction of such fenders and wheel guards be approved by the engineer commissioner of the District of Columbia."

"19. No motorman or conductor shall operate or have in charge any motor car in the District of Columbia that is not fully equipped with fenders of the kind herein adopted or authorized, and any motorman or conductor operating or being in charge of any such car not so equipped shall, on conviction thereon, be punished by a fine not to exceed $10.

"20. The fenders must be kept in thorough working order and in good repair when in use. Any railway company failing to comply with this provision shall be subject to a fine of $20 a day for each and every offense."

These facts were disclosed and proven by the witnesses for appellant, and she is bound by her own evidence. It is unnecessary to consider further the allegations of the declaration and the facts as shown by the evidence, except to suggest that, in an action of this kind, where the negligent acts are alleged, it is incumbent upon the plaintiff to sustain the averments by affirmative proof. In *Hamilton* v. *Metropolitan Street R. Co.* 114 Mo. App. 504, 89 S. W. 893, the court said: "The right of action, however, that accrues to the passenger injured while being served by the carrier, is founded in negligence, but from the character of the relation a presumption of negligence arises from the fact of injury that throws the burden upon the carrier to establish upon its part the exercise of the degree of care required. Under this rule it is unnecessary for the plaintiff, in such case, to specify in his petition the negligent acts that produced his injury. It is sufficient for him to charge, in general terms, that he was injured while being carried as a passenger, as a result of the negligence of the carrier. But when the plaintiff chooses to allege in his petition the specific acts of negligence of which he complains, he assumes the burden of proving them, and as in other cases must recover, if at all, upon the negligence pleaded." To the same effect is *Chicago Union Traction Co.* v. *Leonard,* 126 Ill. App. 189.

The facts in the case at bar, as shown by the plaintiff, are that, at the time of the accident, the car was standing still on

the track of the appellee company in one of the streets of this city, with a fender suspended in front, according to the common and ordinary custom of using fenders on street cars in the city of Washington; that the fender was not defective nor defectively adjusted; that it was one of the kind authorized and required to be used by appellee on its cars by the police regulations of the city, and that, when deceased was approaching to take passage on said car, the conductor signaled the motorman to start, but the motorman held the train, and deceased, in attempting to pass in front of the car, tripped on the fender and fell, receiving the injuries from which he shortly thereafter died.

It is insisted that the deceased was within the law a passenger on the car. We think that the rule which applies to steam railways, where the railway company is the owner of a spacious right of way along its tracks, and owns and maintains depot grounds for the accommodation of its passengers in getting on and off trains, does not apply to a street car company. In the former case, a person may become a passenger by being merely in the depot for the purpose of boarding a train. The company is bound to exercise reasonable care for the safety and protection of its patrons, and to furnish reasonably safe appliances and accommodations in and about the depot and railroad tracks for the safety of passengers getting on and off trains. But no such stringent rule can be applied to a street car company, where the train is stopped in a busy street, with no station house or even platform for the use of the public. Under such circumstances, the franchise, or right of way of the company, is confined within the narrow limits strictly necessary for the operation of its cars, and even this is not an exclusive right of way, but it remains a part of the street open to the public passing along and across the street. In fact, it has no greater right to use the street than the public; and neither has a right to so use it as to make it dangerous to the other; nor can either impose an unreasonable burden upon the other as a result of this joint use. It would be unjust to attempt to hold a street car company, under the above conditions, to the same rule ap-

plied to steam railway companies. The courts have, therefore, applied a different rule, as stated in *Duchemin* v. *Boston Elev. R. Co.* 186 Mass. 353, 66 L.R.A. 980, 104 Am. St. Rep. 580, 71 N. E. 780, 1 A. & E. Ann. Cas. 603, where the court said: "The defendant incurs no responsibility to exercise extraordinary diligence by making an express contract, but only by its exercise of the calling of a common carrier, and its obligation as such does not arise until the intending passenger is within its control. We are unwilling to go farther than the doctrine stated in *Davey* v. *Greenfield & T. F. Street R. Co.* 177 Mass. 106, 58 N. E. 172, that when there has been an invitation on the part of the carrier, by stopping for the reception of a passenger, any person actually taking hold of the car and beginning to enter it is a passenger. See *Gordon* v. *West End Street R. Co.* 175 Mass. 181, 183, 55 N. E. 990, and cases cited." Applying this rule, the deceased was not a passenger on the train at the time of the accident. Not being a passenger, appellee was bound to exercise only the same degree of care toward him that it was required to exercise toward the public generally,—namely, to prevent accident resulting from the operation of its trains through the public streets, when the same can be accomplished by the exercise of reasonable care and diligence on the part of its agents and employees. What was the situation here? The deceased had started to cross in front of the train when the conductor, at a point where he could not see him approaching, because of the north-bound train, signaled the motorman to proceed. The motorman, in the exercise of due precaution, refused to start the train until he had crossed. To have started a train on the signal of the conductor would almost certainly have resulted in an accident. There were certain conditions there existing upon which the motorman was entitled in this emergency to rely. He had a right to assume that the deceased knew what constituted a street car in common use in the city of Washington, and that he would exercise the same care in and around the car in question as the public generally is required to do. The fender on this car, suspended in front, was as much a part of the car when in use on

the street as the wheels, the steps, or the platforms. It was a
part of a physical situation existing on the street, patent to
the senses of everyone in the immediate locality. The law
charges every citizen with knowledge of the fact that every
street car or train in the District of Columbia is equipped in
front with a suspended fender, to be operated by a motorman
when the moving car comes in contact with pedestrians or ob-
stacles on the track, and not when people recklessly run into it
from the side when the car is standing still. As before suggest-
ed, had the motorman, in response to the signal, started the
car, or had he dropped the fender to the track when he saw
the deceased approaching, and the accident had resulted, we
would have before us a different case. As it is, the car was
in perfect condition, equipped as the law required it to be
equipped, standing at an accustomed stopping place, in day-
light, when everyone moving about it, with the exercise of due
care, could see it and all its attachments, and could only be in-
jured from contact with it by the grossest sort of carelessness,—
in this instance, negligence, that contributed directly to the acci-
dent. On the other hand, we are unable to find where the appel-
lee company or its agents were chargeable with any neglect of
duty, either in the equipment or management of the car.

It is contended by counsel for appellant that the doctrine
of *res ipsa loquitur* applies to this case. Before this rule can
be invoked, we must find a condition existing at the time of
the accident which presupposes negligence on the part of the
appellee. It is insisted that the appellee should be compelled
to fasten up the fender when the car is stopped, and lower it
again before the car is started. But such a rule would impose
a duty upon the appellee and a delay upon the traveling public
that would neither be justified by experience nor common sense.
It suffices to say that no such rule was imposed upon appellee,
either by express provision of law or by the custom of operating
street cars within the District of Columbia.

It is also insisted that it was the duty of the motorman to
have dropped the fender to the street when he saw the deceased
approaching. It is neither clear nor probable that this would

have avoided an accident. The fender was in its normal position when the accident occurred. Had the motorman dropped it to the street, the danger would not have been lessened; and, had the accident resulted, appellee would have been here answering for negligence in not leaving the fender in its normal position, and a much more difficult case might have been presented.

Companies operating public utilities are entitled to the same protection at the hands of the courts as the law affords the individual. The rule contended for by counsel for appellant, if applied in the conduct of business generally, would be destructive of human enterprise. As Mr. Justice Moody said in *Atchison, T. & S. F. R. Co.* v. *Calhoun,* 213 U. S. 1, 53 L. ed. 671, 29 Sup. Ct. Rep. 321: "But even where the highest degree of care is demanded, still the one from whom it is due is bound to guard only against those occurrences which can reasonably be anticipated by the utmost foresight. It has been well said that 'if men went about to guard themselves against every risk to themselves or others which, might by ingenious conjecture, be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things.' Pollock, Torts, 8th ed. 41."

No error was committed in instructing the jury to return a verdict for the defendant. The judgment is affirmed with costs, and it is so ordered.                    *Affirmed.*

A writ of error to the Supreme Court of the United States, allowed November 19, 1909, was dismissed December 9, 1909, on motion of the appellant.