THOMAS T. HUTCHINSON *vs.* BOSTON AND MAINE RAILROAD.

Essex.    November 6, 1914. — November 25, 1914.

Present: RUGG, C. J., HAMMOND, SHELDON, DE COURCY, & CROSBY, JJ.

*Negligence,* Railroad. *Railroad. Evidence,* Admission by silence. *Practice, Civil,* Admission by silence of counsel.

It is no evidence that a train of a railroad corporation when running into its terminal station was being operated at an excessive rate of speed, that a witness testified that "the train was bowling along pretty fast."

In an action against a railroad corporation for personal injuries sustained by a passenger, who, after alighting from a train of the defendant upon a platform in its terminal station, was knocked down by another train of the defendant entering the station on a track on the other side of the platform, whose engine struck the plaintiff from behind as he was walking near the edge of the platform on his way out from the station, the testimony of the plaintiff and his witnesses was conflicting and uncertain as to how near the edge of the platform the plaintiff was when he was struck. One witness testified that the plaintiff was very near the granite curbing of the platform when he was struck and that he thought that a beam that went across back of the cow catcher of the engine projected over this curbing, but there was no definite evidence as to whether and to what extent the engine overlapped the platform. Thereupon the defendant asked to be heard on a motion to order a verdict for the defendant, and, at the request of the presiding judge before hearing that motion, evidence was introduced by the defendant showing the exact measurements of the platform and of the overhang of the engine that struck the plaintiff. This evidence showed that no part of the engine extended beyond the line of the platform. The plaintiff made no attempt to contradict this evidence and it did not appear that he in any way disputed the accuracy of the measurements. The judge then heard the motion and ordered a verdict for the defendant. *Held,* that the case must be considered on the assumption that the measurements as to the size of the engine were correct and that no part of the engine overlapped the platform.

Where a passenger, who was on his way out from a terminal station of a railroad corporation after he had alighted from one of its trains and was walking near the edge of the platform that adjoined a track, was thrown down and injured from being struck from behind by some part of the engine of a train that had come into the station on that track not running at an excessive rate of speed, if no part of the engine overlapped the platform and the accident was due to the fact that the body of the passenger protruded over the outer edge of the platform, no negligence is shown as to the management of the train, even if the bell on the engine was not rung.

TORT for personal injuries sustained by the plaintiff at the North Station in Boston from being knocked down by a train of

the defendant which struck him from behind when he was walking along the platform between track 2 and track 3 of that station after he had alighted from another train of the defendant, in which he had come from Lynn on the afternoon of May 13, 1912, and was on his way out from the station. Writ dated June 6, 1912.

In the Superior Court the case was tried before *Hardy*, J., who ordered a verdict for the defendant under the circumstances described in the opinion. The plaintiff alleged exceptions.

*S. Parsons,* (*H. A. Bowen* with him,) for the plaintiff.

*H. F. Hurlburt, Jr.,* (*A. P. Mills* with him,) for the defendant.

HAMMOND, J. There were three counts, the first charging a neglect to provide a suitable platform, the second that the train by which the plaintiff was struck was negligently operated, and the third that it was operated at an excessive speed.

1. As to the first and third counts. There was no evidence to warrant the submission of the case to a jury upon either of these counts. The platform was well constructed, of proper materials, and there was no evidence that it was not of sufficient size to meet the reasonable demands of the travel. The only evidence in support of the allegation of excessive speed contained in the third count was the statement of one witness that "the train was bowling along pretty fast when it went past me. It was going pretty fast when [the plaintiff] was lying on the platform." This is not enough. *Savageau* v. *Boston & Maine Railroad,* 210 Mass. 164, 168.

2. As to the second count. The platform was situated between tracks numbered 2 and 3. The plaintiff had alighted from the train on track No. 2, which was upon the left side of the platform, and the train by which he was struck was upon track No. 3, which was on the plaintiff's right as he was going up the platform. The distance from the outer edge of the curbing of the platform to the nearest rail of track No. 3 was "twenty-two and one half inches at the minimum and twenty-four inches at the maximum." As to the manner in which the accident occurred the plaintiff in his direct examination testified as follows: "Just before the accident I was on the concrete walk, within perhaps two feet of the curbing; I was nearest track No. 3, the right hand track. There was, I think, as large an amount of people as I

ever saw alight from any one train. The platform was thoroughly crowded. After I got off the train on to the platform, I edged toward the right of the posts toward track 3. At the time of the accident I was way this end of the concrete walk nearer the board platform, way this end of the train shed. I kept on walking out toward the exit on to Causeway Street, and the first thing I knew I had this sensation right in back; seems as though somebody put both hands right in there and lifted me right up in the air. Just previous to the accident I heard nothing of any train approaching behind or of any sound of a bell. I was not aware that any train was coming in on track No. 3." On cross-examination he testified as follows: "I had gone about sixty feet on the concrete before something struck me upon the back. I walked straight ahead until I reached the concrete and then began to move over to the right. I began to move over to the right just after I left the board and struck the concrete. From the time I started from the car I alighted from until I got on the concrete I was walking straight ahead and looking straight ahead. When I got over to track 3 I saw there the curbstone and track 3 where I looked was empty. As I was going along moving over to the right, I was still looking ahead varying by looking behind for my friends. They were on my left, close to me; the track was on my right. I think a fair estimate of the distance we walked along by the curbstone straight ahead before something hit me, would be about thirty feet." He further testified that while at the time he was walking he knew he was "close up to the curbing," he made no estimate as to the distance; that he was struck on the "extreme right of the right hand side of . . . [his] back, just above the hip."

Destito, a witness called by the plaintiff, testified that at the time of the accident the plaintiff "was about two feet away from the curbstone." Bador, another witness called by the plaintiff, testified that when the plaintiff "was hit he [the plaintiff] was right close to the granite curbing, very near to it. His feet were on the concrete, but he was on it close to the curb. . . . Sometime after the accident I examined the engine up in the front of the station. I don't know what sort of an engine it was as to size. I don't know much about engines, but it was one of the large type, I should say. I looked especially at the front end to

see what it was that protruded over to strike him. I saw that beam that goes across back of the cow-catcher and in front of the pistons. I think it projected over the curbing on that engine." Another witness, Bergengren, testified that at the time of the accident he, the witness, was about "three feet and a half or four feet from the curb," and "Tom [the plaintiff] was slightly to my right, about a foot." There was much other evidence bearing mostly upon the question of the due care of the plaintiff, but the above was the only evidence as to whether and to what extent the engine overlapped the platform.

At the close of the plaintiff's evidence "the defendant stated to the court that it wished to be heard on a question of law." Before hearing this motion the judge evidently desired to know the width of the platform, and, at the request of the judge, one Witkins, a civil engineer, testified that he had measured the platform; and he gave the distances. These seem to have been substantially embodied in the record as the true measurements. These measurements having been put in, "upon the further request of the court that before argument of the question of law, testimony be introduced as to the amount of overhang of the locomotive which struck the plaintiff, the defendant introduced testimony that the beam of the engine which struck the plaintiff projected twenty-two inches beyond the inside of the rail, and that the cylinder of the same engine projected twenty-two and one half inches beyond the inside of the rail." The defendant was not requested by the judge to rest before arguing its motion to direct a verdict for the defendant, and did not rest.

Upon reading this record it is plain that both the judge and the counsel understood that the question of law upon which the defendant desired to be heard was the one subsequently formally presented to the judge, namely, that upon all the evidence the plaintiff was not entitled to recover; that in order to rule intelligently upon that question the judge wanted some more definite information than had yet been put in as to the dimensions of the platform, the distance between its outer edge and the nearest rail of track No. 3; and that after the measurements as to these matters were put in he desired still further to know whether and to what extent the engine projected over the platform. This further testimony was introduced. After it was put in the plain-

tiff made no effort to contradict it, nor does it appear that in arguing the question of law he in any way disputed the accuracy of the measurements. All parties must have understood that this evidence was put in not merely for the purpose of being weighed against any measurements made by the plaintiff, because the plaintiff had made none; nor even vaguely to contradict the vague evidence of the plaintiff on this matter, but to settle all questions as to these distances and that they be taken as facts by the presiding judge in considering the general questions of law to be argued before him. Under these circumstances it was the duty of the plaintiff to make known his intention to dispute the accuracy of the testimony. The rule applied in *Lindenbaum* v. *New York, New Haven, & Hartford Railroad,* 197 Mass. 314, 323, is not applicable.

The case therefore must be considered upon the assumption that the measurements as to the size of the engine are correct. Upon this assumption no part of the engine overlapped the platform. The accident was due to the fact that the body of the plaintiff protruded over the outer edge of the platform. There is shown no negligence as to the management of the train; and that is so even if the bell was not rung.

*Exceptions overruled.*