NINA B. BEAN, administratrix, *vs.* EASTERN MASSACHUSETTS STREET RAILWAY COMPANY.

Essex.    November 4, 1929. — November 26, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Negligence,* Street railway.

At the trial of an action of tort by an administrator against a street railway company for causing the death of the plaintiff's intestate, there was evidence that, as a street car of the defendant on a down grade and at a rate of speed of twenty to thirty miles per hour was approaching and was about ninety feet from a white post designated as a possible stopping place in a sparsely settled community in a town in the nighttime, the motorman saw "the waving of" a "hand or arm straight up and down," applied the emergency brake and brought the car to a stop one hundred feet beyond the pole; that the travelled part of the way was at the left hand side of the tracks as the car was going, and a gutter was at the right of the tracks; that the car was equipped with a headlight called "golden glow"; that when the wave of the arm was first seen the lights were dimmed "in order not to blind" the person waving; that, as no one boarded the car when he stopped, the motorman backed the car and found the intestate's body close to the tracks. A verdict for the defendant was ordered. *Held,* that there was no evidence warranting a finding of negligence on the part of the defendant or the motorman, and that the verdict properly was ordered.

TORT.    Writ dated August 9, 1926.

In the Superior Court the action was tried before *Gray,* J. Material evidence is stated in the opinion. The judge ordered a verdict for the defendant, and the plaintiff alleged exceptions.

*W. P. Murray,* for the plaintiff.

*H. Mayo,* for the defendant.

CARROLL, J.    This is an action of tort to recover for the death of Joseph Young. It is contended that the intestate

was struck by one of the defendant's cars and received inju ies from which he died.

There was evidence that the accident happened in the town of Middleton on July 15, 1926, at about 9:15 o'clock at night. As the car approached a white pole designating a possible stopping place the motorman saw "the waving of the hand or arm straight up and down." The car was then about ninety feet from the white post. There was evidence that the emergency brake was applied when "the wave of the hand" was seen; that this was all that could be done to stop the car. The car came to a stop about one hundred feet beyond the white pole. The motorman testified that after the car stopped he waited until he believed the "person . . . [he] saw wave had got to the car, . . . [he] opened the door; . . . [he] didn't see anybody coming . . . so . . . [he] reversed the light and shifted . . . [his] handles and went back; it was dark"; that he found the intestate "laid out in the gutter side, face down with his feet two and a half or so feet from the rail . . . the body practically at right angles with the rail." The car was equipped with a headlight called "golden glow." Along the side of the way on the side of the car track there were bushes, "regular brush, wood . . . about three or four feet high." The foliage at that time of the year was "very thick." The rails were dry. As the car approached the place of the accident the grade is down for "probably four or five hundred feet." The car was going from twenty to thirty miles an hour when the motorman applied the brakes. There was evidence that when the wave of the arm was first seen the lights were dimmed "in order not to blind" the intestate; that the motorman "kept toot-ing the whistle" "after he saw the hand wave." The place of the accident was sparsely settled — only one or two houses in the immediate vicinity — and there were no street lights. The travelled part of the way was to the left of the tracks, in the direction the car was going, and the gutter was to the right of the tracks. The car was supposed to stop at or near the white post when a signal was given. The motorman testified that he did not know that any one had

been struck when he stopped the car. A verdict was directed for the defendant.

We are unable to find any evidence of negligence of the defendant or of the motorman to submit to the jury. The deceased knew that the car was approaching; his signal to stop shows this. The motorman, apparently, did all that could be done to stop the car. He was not bound to assume that the intestate would stand so close to the track that the car would hit him. The speed at which the car was moving was not excessive under all the circumstances shown, and the car was properly equipped. The case is governed by *Anger* v. *Worcester Consolidated Street Railway*, 231 Mass. 163, and cases cited. In *Daigneau* v. *Worcester Consolidated Street Railway*, 231 Mass. 166, the plaintiff signalled for the car to stop. It was said in that case there was nothing to show that the motorman "ought reasonably to have anticipated that the plaintiff would stand so near to the track that he would come in contact with the running board on the side of the car."

The plaintiff relies on *Evensen* v. *Lexington & Boston Street Railway*, 187 Mass. 77, *Gerhart* v. *Holyoke Street Railway*, 236 Mass. 392, and *Harlow* v. *Worcester Consolidated Street Railway*, 248 Mass. 572. These and the other cases cited by the plaintiff are to be distinguished on the facts from the case before us.

As there was no evidence of negligence by the defendant or its servants, we have not considered the question, whether the plaintiff's intestate was a passenger. See *Webster* v. *Fitchburg Railroad*, 161 Mass. 298; *Duchemin* v. *Boston Elevated Railway*, 186 Mass. 353; *Welsh* v. *Concord, Maynard & Hudson Street Railway*, 223 Mass. 184.

The verdict for the defendant was directed properly.

*Exceptions overruled.*