GEORGE M. BARAKAT, administrator, *vs.* TRUSTEES OF NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Norfolk. March 2, 1942. — May 26, 1942.

Present: FIELD, C.J., DONAHUE, QUA, & RONAN, JJ.

*Negligence,* Railroad.

Evidence did not warrant a finding of negligence in the operation of a railroad train which, on coming into a station where many passengers were waiting for it and the rails were covered with snow, in some manner struck a passenger who had been walking along the platform with his back to the train.

TORT. Writ in the Superior Court dated July 17, 1939. The action was tried before *Morton,* J.

*N. W. Deering,* for the defendants.

*P. R. Johnson,* (*S. E. Khoury* with him,) for the plaintiff.

QUA, J. The defendants' exceptions present the question whether there was any evidence to support the verdict against them under G. L. (Ter. Ed.) c. 229, § 3, for negligently causing the death of a passenger.

We are of the opinion that there was no substantial evidence that the death of the plaintiff's intestate was caused by negligence of the defendants, even if we assume that the plaintiff's intestate was in truth a passenger so as to subject

the defendants to the supposedly somewhat stricter formula commonly employed to express the standard of care owed by a common carrier to its passenger. *Gardner* v. *Boston Elevated Railway*, 204 Mass. 213, 216, 217.

The following facts were established by agreement of the parties or by answers of the defendants to the plaintiff's interrogatories introduced by the plaintiff and not contradicted: The deceased was killed at about 4:25 in the afternoon of March 13, 1939, by being struck by a passenger train of the defendants which was entering their Readville station in Boston from the southwest on the "inbound" track. The train of five cars approached the station from under a bridge and on a curve toward its left. There was another track on the left side of the train. A fence which separated the two tracks began near the southwesterly end of the platform for passengers. This platform lay between the fence and the track upon which the train approached. It was about ten feet wide at the beginning of the fence and increased in width as it extended in a northeasterly direction toward and under the station "canopy." The "overhang" of the locomotive from the rail toward the fence was about two feet. There had been a substantial fall of snow on the day before the accident, continuing on the day of the accident. At the time of the accident the entire length of the platform had been shoveled. The record is not altogether clear as to the width of the shoveled portion, but seemingly it spread from four feet near the beginning of the fence to the entire width of the platform in the vicinity of the "canopy." Men were still shoveling at the time of the accident. The facilities of the station were in usable condition, and the engineer and fireman knew that the track, platform and fence "appeared to be in suitable condition for the use intended" and knew that from one hundred to two hundred persons would ordinarily be on the platform adjacent to the fence. The deceased, who was employed in the defendants' Readville shop, had left the shop and crossed all tracks, going around the point where the fence began, and had cashed a check at the "pay truck" on the northwesterly side of the tracks. He then retraced

his steps around the fence to the platform, walked along the platform a short distance toward the "canopy," and thereafter was struck in some manner by the pilot of the engine, which was approaching him from behind. He was carried about sixty feet. The train stopped about two hundred feet beyond the place of contact. When the engine had come to a point about twenty feet from the beginning of the fence, the fireman, who was on the side of the engine nearer the deceased, saw him walking on the platform four or five feet from the fence and "five or more" feet from the nearest rail. The emergency brakes were applied and were in proper condition.

There was evidence that snow was piled along the fence to a width of about two feet; that the rails of the track on which the train was coming were covered with snow and invisible; but that the adjoining track was visible, as the wind had blown the snow off. There was evidence that it was the left side of the pilot that came in contact with the plaintiff's intestate. Witnesses testified that they could not say whether the whistle or the bell was sounded before the accident. There was no evidence that they were not. *Tully* v. *Fitchburg Railroad*, 134 Mass. 499, 501, 502.

The only direct evidence as to how the deceased came in contact with the train tended to show that he pushed his way through the line of men on the platform on to the track in front of the approaching train and was struck almost immediately thereafter. If this evidence was not believed there was no proof as to how the deceased came to get hit by the engine and, we think, no proof that negligence of the defendants caused him to be hit. There was nothing to show negligence of the defendants in the construction or management of their station and its appurtenances or in the operation of the train. There was no evidence of the speed of the train or of the distance in which it could have been stopped at various speeds. *Tully* v. *Fitchburg Railroad*, 134 Mass. 499, 502. Even after taking into account all of the adverse conditions, the train, so far as appears, approached the station in a normal and proper manner. So far as appears it was stopped as quickly as it could be

stopped when it could be known that the deceased was in danger. There was evidence that it came to rest from two hundred twenty to two hundred thirty feet short of its normal stopping place. Although snow was still falling at the time of the accident, there was no evidence that the intensity of the storm was then such as appreciably to impair visibility. Notwithstanding the evidence that the track upon which the train came was concealed by fallen snow there was nothing to show that the deceased was deceived as to its location or lulled into a false sense of security through any fault of the defendants. There was no evidence that the platform was unsafe, or that the deceased slipped, or that he was pushed, or that the platform was overcrowded, or that the persons upon it were boisterous or disorderly, or that conduct of that kind was to be expected at that place.

Recovery is precluded on grounds which underlie the decisions in *Savageau* v. *Boston & Maine Railroad*, 210 Mass. 164, and *Hutchinson* v. *Boston & Maine Railroad*, 219 Mass. 389. See *Daigneau* v. *Worcester Consolidated Street Railway*, 231 Mass. 166, 168, 169; *Boyle* v. *Worcester Consolidated Street Railway*, 231 Mass. 184; *Bean* v. *Eastern Massachusetts Street Railway*, 269 Mass. 206. Compare *Young* v. *New York, New Haven & Hartford Railroad*, 171 Mass. 33, 35, and *McCarthy* v. *Boston, Revere Beach & Lynn Railroad*, 262 Mass. 56.

*Exceptions sustained.*
*Judgment for the defendants.*