HUGH HICKS *vs.* NEW YORK, NEW HAVEN, AND HARTFORD
RAILROAD COMPANY.

HUGH HICKS, administrator, *vs.* SAME.

Worcester.    October 1, 1895. — October 17, 1895.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & BARKER, JJ.

*Personal Injuries — Railroad — Grade Crossing — Due Care — Negligence —
Trial — Action — Exceptions — Evidence.*

If a person riding in a large covered gypsy wagon having windows in the sides,
and drawn by two horses at the rate of four or five miles an hour along a high-
way in a town crossed at grade by a railroad, stops his team about one hundred
and fifty feet from the crossing to look and listen for a coming train, the view
of the railroad being obstructed for a part of the way, and sees and hears none,
and knows that the crossing is equipped with electric bells to warn travellers of
the approach of trains, which on this occasion were not ringing, and then
enters upon the railroad and is struck by a train and injured, although if he had
continued to look after starting onward he could have seen the train before
reaching the crossing, in an action against the railroad corporation for his
injury the question of his due care is properly submitted to the jury.

In an action against a railroad corporation for injuries caused by a collision with a
train at the crossing at grade of a highway by the railroad, if the evidence
shows that the crossing was very dangerous, being in a thickly settled town
and a view of the railroad being obstructed for a part of the way in approaching
the crossing, and that the train was running at the rate of over forty miles an
hour, and ran three or four hundred feet beyond the crossing before it was
stopped, the jury may find that the defendant was negligent in running the
train at an unreasonable speed at that place, and in not placing a flag, gates, or
other guards there.

The failure of electric bells at the crossing at grade of a highway by a railroad to
ring at the approach of a train is evidence of negligence of the railroad corpora-
tion in an action against it for injuries caused by a collision with the train at
the crossing.

Whether a boy ten years old, who was driving a pony team immediately behind a
large wagon drawn by two horses driven by his grandfather, who, as he ap-
proached the crossing at grade of the highway by a railroad, stopped his team
when his grandfather stopped the other team for the purpose of looking and
listening for a coming train, and who then followed that team upon the track
and was struck by a train, was in the exercise of due care, is a question of fact
for the jury in an action against the railroad corporation.

If the judge presiding at a trial gives full and sufficient instructions, which enable
the jury to understand the law applicable to all branches of the case, it is not a
ground of objection that he declines to take each fragment of the testimony
and to state a conclusion of law applicable to a possible finding founded
upon it.

An action against a railroad corporation, under Pub. Sts. c. 112, § 212, for causing the death of a person, cannot be maintained upon proof of negligence of the defendant's servants, without proof that the negligence was gross.

A point not taken at the trial is not open upon a bill of exceptions.

Although the counts of a declaration in an action against a railroad corporation for causing the death of a person are imperfect, the action must be deemed to have been brought under Pub. Sts. c. 112, § 212, and not at common law.

If evidence, which is admitted at a trial in the expectation that it will be followed by other evidence which is not subsequently offered, is withdrawn from the jury, and both parties are informed of such withdrawal, and make their arguments upon that understanding, its admission affords no ground of objection.

TWO ACTIONS OF TORT. The first case was an action to recover for personal injuries to the plaintiff, and for injuries to his property, by a collision with a train on the defendant's railroad at the crossing at grade of a highway in Northbridge by the railroad. The second case was an action to recover, as administrator of her estate, for the death of the plaintiff's wife, who was killed by the same accident. The cases were tried together in the Superior Court, before *Aldrich,* J.

The jury returned a verdict for the plaintiff in each case ; and the defendant alleged exceptions, which were allowed by *Sherman,* J., after the death of *Aldrich,* J., and which appear in the opinion.

*F. P. Goulding & C. F. Choate, Jr.,* for the defendant.

*W. S. B. Hopkins & W. Thayer,* (*H. W. Cobb* with them,) for the plaintiff.

KNOWLTON, J. The presiding justice could not properly direct a verdict for the defendant in either of these cases. There was evidence in favor of the plaintiff upon the question whether he was in the exercise of due care. The evidence tended to show that the crossing on which he was injured was very dangerous. As the highway and the railroad approach each other going northward toward the crossing, they run for a considerable distance almost in the same direction, and a part of the way a house and other objects make it impossible for a traveller on the highway to see a coming train. The civil engineer called by the defendant testified that at a point southerly on the highway one hundred feet from the nearest rail as you approach the crossing, you can see down the track to the southward five hundred feet, and that at a point fifty feet farther from the crossing for a distance of three hundred feet

the view of the track is obstructed by the house and a hill. The plaintiff testified that he stopped about one hundred and fifty feet from the crossing, and looked to see if a train was approaching and saw none, and listened and heard none ; that he then drove on and was struck by the locomotive. It appeared that he knew that the crossing was equipped with electric bells to warn travellers of the approach of trains, and he testified that the bells were not ringing. His testimony upon the question whether he looked after starting onward was indefinite, and somewhat contradictory. It appeared that, if he had continued looking, he could have seen the train before reaching the crossing. The locomotive engineer testified that the train was then running at the rate of a little more than forty miles an hour. The plaintiff and his wife, sitting on chairs, were riding in a large covered gypsy wagon with a leather top which extended forward to the front of the wagon, and which had in it large windows of clear glass in the sides, right opposite the chairs, and another window in the rear. He testified that he was driving at about four or five miles an hour. Under these circumstances it cannot be said, as matter of law, that the plaintiff was not in the exercise of due care. He was quite near the crossing when he stopped and looked and listened. His conduct after he started forward might properly be affected to some degree by the fact that the electric bells were not ringing. There was more or less difficulty in seeing from his seat in the wagon, as he drove along, whether a train was coming on his left from behind him, and the care of his horses necessarily occupied some of his attention. We think the case was properly left to the jury to determine whether he exercised such care as ordinarily persons are accustomed to exercise under like circumstances.

The speed at which a train may be run without negligence depends upon the dangers attendant upon running it. Upon a good road with proper equipments, over which there are no crossings where persons are liable to be in peril, it may safely be run very fast ; but in a thickly settled town where there are frequent grade crossings of streets at which the view of the track on each side is obstructed by houses, it would be negligent to run rapidly. In view of the nature of this crossing and the

amount of travel over the highway, of which the jury could judge somewhat from their view, we cannot say that the circumstances of the accident, the distance which the train went before it was stopped,[*] and the testimony of the engineer, did not furnish evidence from which the jury might have found that the train was running faster than was reasonable at that place. For the same reasons, in view of the evidence indicating the rate of speed at which the defendant was accustomed to run trains there, we are unable to say that there was no evidence from which the jury might have found that it was the duty of the defendant to place a flag, gates, or other guards at the crossing. *Hubbard* v. *Boston & Albany Railroad*, 162 Mass. 132. *Eaton* v. *Fitchburg Railroad*, 129 Mass. 364. If trains are to be run at great speed, proper precautions must be taken for the protection of travellers at peculiarly dangerous crossings of highways. With such precautions, the rapidity of passing trains will not alone constitute negligence.

It cannot be said that the failure of the electric bells to ring at the approach of the train was not evidence of negligence of the corporation. The request to rule to that effect was made in the case of the plaintiff suing personally, and in that action the defendant was liable for the negligence of its servants, to the same extent as for its own. The evidence tended to show that, if the apparatus had been kept in proper condition, the bells would have rung as the train approached. Their unexplained failure to ring was therefore some evidence of negligence on the part of the corporation or its servants. *White* v. *Boston & Albany Railroad*, 144 Mass. 404. *Mahoney* v. *New York & New England Railroad*, 160 Mass. 573. *Hennessy* v. *Boston*, 161 Mass. 502.

The evidence in regard to the care of the boy of ten years of age, who was the plaintiff's grandson and was driving the pony team immediately behind the plaintiff's wagon, is very slight, but we are unable to say that there was nothing to submit to the jury on that point. It appears that he was close behind the plaintiff's wagon, and the circumstances warrant an inference that he was expected to be governed in his conduct to some

---

[*] The engineer testified that the train ran three or four hundred feet beyond the crossing before it was stopped.

extent by the management of the team just before him. If the pony had been hitched to the hind part of the plaintiff's wagon it would not be contended that the boy was to be judged as if he had been driving with no other team in his company. There was evidence that the pony team stopped when the plaintiff stopped. If the jury found that the plaintiff was in the exercise of due care in his management of the team which he was driving, and that the boy ten years old was a suitable person to be intrusted with the pony team just behind the other, as we think they might, we are of opinion that they might also find that the boy exercised such care in driving as ordinarily careful boys of his age are accustomed to exercise under like circumstances.

All the rest of the defendant's requests for instructions which were refused by the court, so far as they were correct in law, called for specific directions in regard to possible findings from particular parts of the testimony upon a single issue. It is largely a matter of discretion for the presiding judge as to how far he will discuss different phases of the testimony upon a particular subject and give specific instructions, each founded upon only a part of the testimony bearing upon the subject. If he gives full and sufficient instructions, which enable the jury to understand the law applicable to all branches of the case, it is not a ground of objection that he declines to take each fragment of the testimony and to state a conclusion of law applicable to a possible finding founded upon it. *McDonough* v. *Miller*, 114 Mass. 94. *Tatterson* v. *Suffolk Manuf. Co.* 106 Mass. 56. *Gunnison* v. *Langley*, 3 Allen, 337. *Murray* v. *Knight*, 156 Mass. 518. *Neff* v. *Wellesley*, 148 Mass. 487. In this case the instructions upon these subjects were full and clear, and the defendant has no reason to complain of them.

In the action by Hicks as administrator the defendant requested the court to instruct the jury as follows: " There is no allegation in the first count on which a verdict can be rendered for the plaintiff. The count does not allege any carelessness or negligence of the corporation, nor any unfitness or gross carelessness of its servants or agents." The stenographer's report of the charge upon this part of the case leaves us in doubt as to what was said by the judge in regard to it. The exceptions

were allowed by another justice after the death of the judge who presided at the trial, and if the report of the charge was imperfect, there was apparently no correction of it.    This instruction could not properly be given, for the count charges negligence of the corporation in failing to furnish proper signals or bells at the crossing, and in failing to protect the crossing, by proper guards or a flagman.    In reference to the other negligence alleged in it the count was defective in failing to charge that there was unfitness or gross carelessness of the servants or agents of the corporation.    We have a report of the whole charge upon the question of liability, and as we understand it the judge submitted both actions to the jury under the same rules in regard to the liability of the defendant for the carelessness of its servants.    They were permitted in this action, as well as in the other to find for the plaintiff upon the first count, if there was negligence of the defendant's servants, without proof that the negligence was gross.    This was error.    Pub. Sts. c. 112, § 212.    The defendant excepted to this part of the charge, and its exception must be sustained.

It is contended that the declaration in this action is defective in not alleging that the plaintiff's wife left next of kin for whose benefit there might be recovery under the statute.    See *Commonwealth* v. *Eastern Railroad,* 5 Gray, 473.    But this exception is not open to the defendant in this court, inasmuch as it was not taken in the court below.

It is also contended that this action must be treated as not brought under the statute, but at the common law, inasmuch as neither count of the declaration contains allegations which ought to be found in an action under the statute.    But the common law recognizes no right of action in a case of this kind, and, although the counts are imperfect, we think the action must be deemed to have been brought under the statute.

We are of opinion that the withdrawal from the jury of the evidence of the action of the selectmen in writing a letter to the defendant about seven months before the accident, requesting it to maintain a flagman and lights at the crossing, leaves the defendant without a legal ground of objection to the admission of it.    It appears from the charge, that at the time of its admission the court expected that it would be followed by other

evidence which was not subsequently offered, and both parties were informed that it was withdrawn from the jury, and they made their arguments with the understanding that it was not in the case. We do not see that it was so prejudicial to the defendant in its effect as to require us to grant a new trial.

If there was error in the original instructions in regard to gross negligence the error was corrected, and the jury were properly instructed soon afterwards. In the first case, the exceptions must be overruled, and in the second case, they must be sustained.                                                                  *So ordered.*