FRANK CLAPP *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

JOHN BRENNAN *vs.* SAME.

Middlesex.    January 15, 1918. — February 26, 1918.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence*, Railroad, In maintaining planking at grade crossing. *Evidence*, Competency.

In an action against a railroad corporation for damage to the plaintiff's wagon and horses by reason of one of the plaintiff's horses catching one of his fore feet in a space between the planking and a rail of the defendant's track at a grade crossing of a highway which it was the duty of the defendant to maintain, there was evidence that the distance between the planking and the rail where the horse caught his foot was two and a half inches and that the edge of the planking was worn and sloped down on the side toward the rail and was slippery, and it was *held* that this warranted a finding that the crossing was in a defective condition which rendered it unsafe for travellers and that such condition could have been discovered and remedied by the exercise of reasonable care and diligence on the part of the defendant.

In the same case the plaintiff was allowed to go to the jury on the question whether the engineer was running the engine at an excessive and unreasonable rate of

speed.  The crossing tender testified that as soon as the horse fell he started from his shanty near the crossing and ran up the track on which the train was approaching with a red flag to stop the train, that he travelled from the shanty up the track about three hundred and thirty feet and that he saw the train when he was about half way to where he stopped, that the train was then about two hundred and fifty feet beyond a certain tower which was over eight hundred feet from the crossing.  There was evidence that there were two or three freight cars on a side track about two hundred and fifty feet from the crossing and also that there was a curve in the track between the crossing and the approaching train, and that both of these things somewhat obstructed the engineer's view of the crossing.  *Held*, that upon all the evidence it was a question for the jury whether the engineer saw the crossing tender or in the exercise of reasonable care ought to have seen him and have stopped his train in time to avoid the collision.

In the same case there also was evidence that the train consisted of five or six cars, each from forty to sixty feet long, that when it struck the plaintiff's wagon it was running at the rate of fifteen or twenty miles an hour and that it was not brought to a stop until all but the last car had passed over the crossing.  It appeared that the crossing was "a few hundred feet" from a passenger station at which the train was to stop.  *Held*, that this court could not say that there was not evidence from which the jury might have found that the train was running faster than was reasonable under the circumstances.

In the same case it was *held* that evidence as to the height of the gates at the crossing and whether the engineer could have seen that they were raised was admissible in connection with other evidence upon the question, whether he was running the train at an unreasonable rate of speed as he approached the crossing.

In the same case it was *held* that evidence as to the speed of the train was competent for the same purpose.

Two ACTIONS OF TORT, the first by the owner of a wagon and the second by the owner of a pair of horses, for damage to the wagon and the horses from being run into by an engine and train of the defendant at a grade crossing of the tracks of the railroad operated by the defendant with Worcester Street in Framingham on February 17, 1915.  Writ dated March 31, 1915.

Counts one and three of the declarations on which the cases were tried are described in the opinion.

In the Superior Court the cases were tried together before *Keating*, J.  The evidence is described in the opinion.  At the close of the evidence the defendant asked the judge to make, among others, the following rulings:

"1. On all the law and the evidence the plaintiff cannot recover on the first count."

"3. On all the law and the evidence the plaintiff cannot recover on the third count."

"5. There is no evidence of the defendant's negligence."

"7. It was not negligence on the part of the defendant not to maintain for the engineer a clear view of the crossing for a distance of five hundred or six hundred feet north of the crossing.

"8. The fact that the engineer did not see the crossing until he had passed the end of the last freight car is no evidence of negligence of the defendant or its agents or servants.

"9. If you find that the engineer did not see the crossing until he had passed the end of the last freight car, that fact is nevertheless no evidence of negligence of the defendant, or its agents or servants.

"10. If you find that the gates were up and that they could have been seen from an approaching engine when five or six hundred feet away by one who had looked, and if you find that the engineer did not look, it is no evidence of negligence on the part of the defendant, or the engineer, that he did not look or did not see.

"11. If you find that the engineer saw that the gates were up when he was distant five hundred or six hundred feet, and that he then made no attempt to stop, those facts are not evidence of negligence.

"12. There is no evidence that the plank or planking was defective."

"15. If you find that the edge of the planking at the crossing wore off, or did not retain its square edge, nevertheless that is not evidence of negligence in this case.

"16. There is no evidence that the defendant was negligent in permitting (if that is the fact) one edge of the planking to become worn off, or rounded, instead of maintaining a square edge."

The judge refused to make any of these rulings as requested and submitted the cases to the jury on the first and third counts of the declarations with other instructions. The jury returned verdicts for both plaintiffs, and assessed damages in the case of the plaintiff Clapp in the sum of $75 and in the case of the plaintiff Brennan in the sum of $290. The defendant alleged exceptions to the refusal of the judge to make the rulings requested, to certain portions of the charge and to certain rulings as to the admission of evidence.

*A. W. Blackman,* for the defendant.

*P. H. Kelley,* for the plaintiffs.

CROSBY, J.   While the plaintiff Brennan was driving a pair of horses, owned by him and attached to a wagon owned by the plaintiff Clapp, across the tracks of the defendant's railroad on Worcester Street in the town of Framingham, one of the horses caught his front hoof in a space between the planking and the rail and fell down; while in that position, the rear end of the wagon, which projected partly over the south bound main track, was struck by the engine of a train, damaging it and injuring the horses.

The cases were submitted to the jury upon the first and third counts: the first alleged negligence in failing to provide and maintain proper and suitable planking on the crossing; the third alleged that the engineer was negligent in operating the engine at an unreasonable rate of speed as he approached the crossing.

There was evidence that the distance between the rail and the planking where the horse's hoof was caught was two and a half inches; that the edge of the plank nearer the rail was worn off. "It was sloped down on the outer edge. The edge of the plank was worn down, sloughed off." The plaintiff Brennan, in describing the condition of the planking where the horse fell, said: "Well, there was a piece of plank . . . was wore down. It is some slippery like there. When the horse got her foot in there . . . and . . . her foot slipped in there between the rail and the plank, and there she caught, . . . held it in there by the toe piece." There was evidence from other witnesses that the plank was worn and rounded at the side nearest the rail. There was also evidence that the plank was so worn along the side nearest the rail for two or three feet.

The defendant was required by statute to keep in repair that portion of Worcester Street that was crossed by its railroad so that travellers would be secured a safe and easy passage across it. St. 1906, c. 463, Part II, § 112. *Harris v. Boston & Maine Railroad,* 211 Mass. 573.

The presiding judge, at the request of the defendant, instructed the jury that "It is not negligent for the defendant to maintain on a crossing a distance of two and a half inches between the plank and the rail. It is not negligence on the part of the defend-

ant to maintain that space of two and a half inches between the edge of the plank and the rail."

The evidence that the edge of the planking where the horse fell was worn and sloped down on the outer edge and was slippery, warranted a finding that it was in a defective and unsafe condition which rendered the highway unsafe for travellers, and that such defective condition could have been discovered and remedied by the defendant in the exercise of reasonable care and diligence. *Gillett* v. *Western Railroad*, 8 Allen, 560. *Harris* v. *Boston & Maine Railroad, supra.*

Upon the question whether the engineer was running his engine at an excessive and unreasonable rate of speed, the crossing tender testified that as soon as the horse fell upon the track, he (the crossing tender) started from his shanty on the east side of the tracks and south of the crossing and ran up the south bound track, on which the train was approaching, with a red flag to stop the train; that the distance he travelled from the shanty up the track he estimated at about three hundred and thirty feet, and that he first saw the train when he was about half way to where he stopped, that "the train was then about where Chenery's coal shed is located, which he estimated to be about two hundred and fifty feet beyond the tower," which was over eight hundred feet north of the crossing. This witness also testified that he first saw the roof of the engine cab when the engine was about at the freight house. The record shows that the freight house was about six hundred feet north of the crossing. While there were two or three freight cars on the side track about two hundred and fifty feet north of the crossing, and a curve in the track, both of which somewhat obstructed the engineer's view of the crossing, still it was a question for the jury upon all the evidence whether the engineer saw the crossing tender or in the exercise of reasonable care ought to have seen him and have stopped his train in time to have avoided the collision. *Hicks* v. *New York, New Haven, & Hartford Railroad*, 164 Mass. 424.

There was evidence that the train, consisting of five or six cars, each from forty to sixty feet long, was running at the rate of fifteen or twenty miles an hour when it struck the team, and was not brought to a stop until all but the last car had passed over the crossing. In view of the location of the crossing (which is de-

scribed as "a few hundred feet" from the passenger station at Framingham Centre), the speed of the train, the distance it went beyond the crossing before it stopped, and the testimony of the crossing tender, we cannot say that there was not evidence from which the jury might have found that the train was running faster than was reasonable under the circumstances.

The question whether the driver of the team was in the exercise of due care was for the jury, and the defendant does not contend to the contrary.

The evidence as to the height of the gates and whether the engineer could have seen them was admissible in connection with the other evidence upon the question whether he was running the train at an unreasonable rate of speed as he approached the crossing; and the evidence as to the speed of the train was competent for the same purpose.

We perceive no error in the action of the judge in the admission or exclusion of evidence, in the failure to give the rulings requested or in the instructions given.

*Exceptions overruled.*