JOHN TAMKUN, administrator, *vs.* BOSTON AND MAINE
RAILROAD.

Middlesex.    November 17, 1938. — December 30, 1938.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Negligence,* Railroad.

Evidence as to the conduct of the fireman and the engineer of a railroad
train running "express" at their usual rate of sixty miles per hour
in an isolated district, when they saw a woman, who this court as-
sumed had an easement to cross, emerge from foliage and go upon
the way to cross in front of them, would not have warranted a find-
ing of negligence on their part.

TORT, for the death of the plaintiff's intestate alleged to
have been caused by negligence in the operation of a train
of the defendant.  Writ in the Superior Court dated May 6,
1935.

The action was tried before *Dowd,* J., who ordered a ver-
dict for the defendant.  The plaintiff alleged exceptions.

*H. Lawlor,* for the plaintiff.

*J. C. Reilly,* (*C. S. Maddock* with him,) for the defendant.

RONAN, J.  The decedent was struck and killed by a
train while she was attempting to cross the tracks, at Chelms-
ford, at about 9:30 o'clock on a clear, pleasant morning in
June, 1934.  Her husband, hereinafter referred to as the
plaintiff, was the owner of a parcel of land that extended
easterly from the Daniel Webster Highway to the Merrimac
River.  The tracks of the defendant, which were located a
short distance from the top of the westerly bank of the
river, divided the plaintiff's land into two parcels.  The
plaintiff purchased this property in 1920, and since then
had lived with the decedent and their children in a cottage
situated between the highway and the railroad location.
The plaintiff claimed a right of way across the defendant's
location by virtue of a written instrument, dated June 4,
1841, given by one Fletcher, a predecessor in title, to the
Nashua and Lowell Railroad Corporation, the defendant's

predecessor in title, releasing the corporation from all damages that might be sustained by Fletcher, his heirs and assigns, on account of the location and operation of the railroad. This release contained the following recital: ". . . it is understood however that said Corporation shall keep up and in good order such proper gates & passways as by law they are required and which they have agreed to do."

The defendant maintained two lines of track which ran in a general northerly and southerly direction, the southbound track being the one farther away from the river. The train in question consisted of a locomotive and three cars, and had begun its trip at White River Junction, Vermont. It was running express, on the southbound track from Nashua to Lowell, at its usual speed of sixty miles an hour along a fourteen-mile stretch of track over which there were no public highway crossings at grade. The accident occurred about midway between Nashua and Lowell. A growth of foliage, five or six feet high, ran roughly parallel to the northbound track, at a distance of about five feet easterly from that track. To the east of this line of foliage, the land descended to the river. The distance between the rails of each track was four feet eight and one half inches, and there was a space of five to six feet between the tracks.

The decedent was forty-three years old and in good health. Two witnesses testified to the happening of the accident. One Duprey, who operated a filling station next to the plaintiff's property, heard the locomotive whistle, looked up and saw the decedent as "she was just about over the outside rail, just possibly past it." The locomotive was then twenty-five or thirty feet from her. He saw her take a step and then jump in an effort to clear the locomotive. She was struck and carried ninety feet. There were two blasts of the whistle very close together. The second blast was sounded about the time she was struck. The fireman testified that the train was on a long, left hand curve and was coming to the straightaway when, five or six hundred feet ahead of him, he saw the intestate, four or five feet

from the northbound track, walking in a normal manner up the bank. Within two or three seconds she stepped on to the northbound track. He rang the bell and notified the engineer to stop as quickly as he could. The engineer immediately gave two sharp blasts of the whistle and applied the emergency brakes. The decedent was then about one hundred feet away. She was thirty or forty feet in front of the engine when he last saw her. Only five or six seconds elapsed from the time he first saw her until she was struck. The train stopped in about one thousand feet.

We assume, without deciding, that the decedent had the right to cross the tracks at the place of the accident, although the record does not disclose any physical arrangement upon the railroad location indicative of the existence of a crossing. There was testimony that the accident happened near an opening in the rear fence of the plaintiff's property, but how long this opening had existed before the accident or by whom it was made or whether the defendant authorized or even permitted it is not shown by the record. There was no evidence that the defendant ever maintained any gate or "passway" at the place of the accident. The release given by Fletcher, under which the plaintiff contends the decedent had the right to cross the location, gave the defendant the right to operate its trains over the locus and, necessarily, gave it the exclusive and paramount use of the area while its trains were passing over it. *Granger* v. *Boston & Albany Railroad*, 146 Mass. 276, 280. *Rigg* v. *Boston, Revere Beach, & Lynn Railroad*, 158 Mass. 309, 312.

The train in question was running along a more or less isolated path, bordering within a few feet of the top of a slope that descended to the river. There was no testimony as to the extent of the use of the railroad location by the plaintiff or his family in connection with his rear land. The evidence shows that the fireman was on the lookout and saw the decedent about as soon as she emerged from the foliage. It was not unreasonable for him to believe that she would see and hear the train. She could have immediately stopped or changed her direction. She was not hurrying along and, apparently, was not acting under compulsion

or necessity.  The fireman could properly assume that she would exercise care for her own safety or at least would not attempt to pass in front of the train.  *Casey* v. *Boston & Maine Railroad,* 231 Mass. 529, 534.  *Gannett* v. *Boston & Maine Railroad,* 238 Mass. 125, 131.  Just as soon as she indicated that she might continue her journey across both tracks, he rang the bell and notified the engineer, who blew the whistle and applied the brakes.  They were not called upon to give any warnings or to slacken the speed until, contrary to their reasonable expectations, the decedent manifested an intention to proceed across the tracks.  As quickly as the fireman, who was the only one who could see her, sensed her purpose of crossing he, and the engineer upon receiving notice of her presence, diligently employed every available means to avoid the accident.  There is no evidence that either was negligent.  *Chisholm* v. *Old Colony Railroad,* 159 Mass. 3.  *Sypher* v. *Director General of Railroads,* 243 Mass. 568.  *MacLaren* v. *New York, New Haven & Hartford Railroad,* 252 Mass. 233, 235.  *Davis* v. *New York, New Haven & Hartford Railroad,* 272 Mass. 217.

The train was not travelling at a rate of speed higher than the rules of the defendant permitted.  The tracks were evidently used for the passage of interstate express trains which may be reasonably expected, in the interests of public convenience and necessity, to proceed at a higher rate of speed than trains running on short trips for the accommodation of all or nearly all of the communities, large or small, through which they pass.  The reasonableness of the speed, however, must be determined in view of the physical characteristics of the locus in question and with due regard to the number of persons ordinarily to be found either upon or in proximity to the railroad location.  We cannot say that the running of the train at its usual speed at the place described in the record constituted negligence.  *June* v. *Boston & Albany Railroad,* 153 Mass. 79.  *Hicks* v. *New York, New Haven & Hartford Railroad,* 164 Mass. 424, 426, 427.  *Chase* v. *New York Central & Hudson River Railroad,* 208 Mass. 137, 142, 143.

*Exceptions overruled.*