WOODROW P. FOLLETT, administrator, *vs.* BOSTON AND MAINE RAILROAD.

Essex.  March 4, 1941. — April 3, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Negligence*, Railroad, Grade crossing.  *Railroad*, Grade crossing.

A statute requiring the giving of warning signals from railroad trains at a grade crossing with a "road or street" had no application to a private farm crossing.

Evidence that a railroad train, approaching a private farm crossing at grade a few minutes late, was being driven at a speed of fifty miles an hour without a warning signal, and that, because of a curve and an embankment, neither the engineer nor the fireman saw a motor vehicle on the track at the crossing until too late to avoid a collision,

would not have warranted a finding of violation of a rule of the railroad corporation requiring the ringing of the engine bell "to prevent accident," nor a finding that the train was being operated negligently.

TORT. Writ in the Superior Court dated September 24, 1938.

A verdict for the defendant was ordered by *Donahue,* J.

*R. B. Owen,* for the plaintiff.

*F. P. Garland,* (*R. B. Johnson* with him,) for the defendant.

DOLAN, J. This is an action of tort to recover for the death of the plaintiff's intestate, as the result of alleged negligent operation of a train of the defendant, which struck a motor truck driven by the intestate as it was proceeding over a railroad crossing at Vernon in the State of Vermont. (See Vermont P. L. §§ 2859, 2860.) The case was tried to a jury and at the close of the evidence the judge allowed the defendant's motion for a directed verdict, subject to the plaintiff's exception.

There was evidence to warrant a finding of the following facts. The train involved was owned and operated by the defendant over tracks of the Central Vermont Railway Company by virtue of an agreement between that corporation and the defendant. The Central Vermont Railway Company is the successor in title of the Brattleboro and Fitchburg Railway Company to which title to the land on which were located the tracks where the accident occurred had been granted in 1848, the grantor reserving to himself and his heirs and assigns "two good crossings over the Company's Rail Road at a grade for teams, cattle, and carriages . . . ." One of the crossings was to be in the rock pasture, the other was to be "near the site of the old barn" and to have cattle guards. It was at this latter crossing that the accident occurred. The employer of the plaintiff and the intestate (his wife) took the benefit of this reservation by various conveyances.

The accident happened on April 7, 1938, at 2:33 P.M. At about two o'clock on that day the plaintiff and the intestate went into the barn on the south side of the railroad track and put some straw in a truck, about fourteen feet long, which was owned by the plaintiff. On their way to

the barn the engine of the truck coughed from the cold and seemed to be "choked." After working in the barn between five and ten minutes they started to go home. It was then after train time. While in the barn the plaintiff had not heard "what was going on on the track." He was "posted as to the time" the train, which ran daily, went. The intestate had been over the crossing quite a few times before the accident, was familiar with it, and had seen trains going by. She was operating the truck after leaving the barn, and the plaintiff was behind it as it proceeded back toward the house. The "gate to the railroad was shut." (See Vermont P. L. § 6260.) The plaintiff opened it and the intestate drove through. The distance from this gate to the first rail of the track is twenty-one feet. The track is a single track with one plank twelve feet long on each side of each rail at the crossing. The planking continues from one side of the track to the other. There is a curve in the track which ends at a point two hundred seventy-five feet to the west of the center of the crossing, and a person standing in the middle of the crossing can see the rails for a distance of six hundred feet. A person standing at a point six hundred feet to the west of the crossing in the middle of the rails could see the crossing. While at the gate the plaintiff did not see anything that indicated there was a train, but "at some time" he noticed the smoke of the train back on the curve of the track, about six or seven hundred feet away. The plaintiff did not hear anything, but he knew the train was coming. The intestate was then going into the crossing "in first gear"; "the track was rough and the crossing rough." The intestate's eyesight and hearing were good. Seeing "this smoke" the plaintiff "hollered; the truck kept going across . . . [the plaintiff] saw the train when it had just about reached the flag station" (about one hundred feet to the west of the crossing but "abandoned and . . . in disuse" at the time of the accident). The truck was over the tracks when struck by the train. An engine travelling over the track "would overhang the track about two feet seven inches on each side from the gauge of the rail." The train came to

a stop with the rear car about three hundred feet from the crossing. The truck was lying "parallel with the tracks." The intestate was lying between the track and the truck and when the plaintiff "got to her" she was dead.

A rule of the defendant which was introduced in evidence reads as follows: "The engine bell must be rung when an engine is about to move and while approaching and passing public crossings at grade or to prevent accident."

At the time of the accident the train was being driven by an engineer who was familiar with the crossing and the locations along the track, and knew that when he approached the crossing on the day in question he was six minutes late. It was his regular run from Brattleboro which was six and one half miles from the crossing. He was going forty to fifty miles an hour; he gave no signal as he came around the curve or at any time up to the time of the collision, and did not see the truck until he was about two hundred twenty feet away. Up to that point his view was obstructed by a hill or embankment and the barn on his right. As soon as he saw the truck he "applied the brake and the emergency; . . . shut the steam off and put on the sand," but the train "was going so fast that he could not stop [it] until . . . [it] had gone three or four hundred feet beyond the crossing." The fireman was seated on the left hand side of the locomotive, which was seventy-five feet long "from the boiler to the tail end of the tank." The top of the boiler was above the line of his vision. He was "looking ahead with his head out of the side window" and did not see the truck until after the engineer had applied the brakes.

There was no error in allowing the defendant's motion for a directed verdict. The plaintiff properly does not contend that Vermont P. L. § 6241, relative to ringing of bells or blowing of steam whistles where a railroad crosses a road or street, applies in the instant case, where the crossing was a private farm crossing. The word "road or street" as used in the statute indicates a public and not a private way. *Boston & Maine Railroad* v. *Daniel,* 290 Fed. 916, 918–919.

The rule of the defendant, already set forth, has no application to the facts in the present case.  The engine was not about to move, it was not "approaching and passing" a public crossing, and we think that the jury could not find properly that the engineer knew or ought to have known of any danger to the intestate or others in time to prevent the accident.  See *Durkee* v. *Delaware & Hudson Railroad*, 106 Vt. 488; *Tamkun* v. *Boston & Maine Railroad*, 302 Mass. 59, 62.

The plaintiff has made no case based upon a negligent rate of speed as the train approached the crossing.  There is nothing in the record to show that the rate of speed at which the train was being operated as it approached the crossing was in violation of any rule of the defendant.  In the circumstances of the case, and particularly in view of the. fact that the crossing in question was a private farm crossing, the intestate must be held to have been obliged to rely upon her own vigilance for her safety.  See *Bassett* v. *Delaware & Hudson Co.* 62 Fed. (2d) 74, 75; *Tamkun* v. *Boston & Maine Railroad*, 302 Mass. 59, 62.  The fact that the train was six minutes late would not warrant the jury in finding that the intestate was relieved of the obligation just referred to.

In the opinion of a majority of the court the evidence would not warrant the jury in finding that the defendant's train was being operated negligently at the time of the accident.

*Exceptions overruled.*