325 Mass. 367                                      367

McNally *v.* Trustees of New York, New Haven & Hartford Railroad.

---

EDWARD C. MCNALLY, administrator, *vs.* TRUSTEES OF NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Suffolk.   January 3, 1950. — February 10, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Negligence,* Railroad: person on track.

A finding of negligence of either the engineer or the fireman of a railroad train which struck a passenger walking across the track at a station was not warranted where, although they had a clear view for nine hundred feet in the direction of the station, there was no evidence showing their distance from the passenger when either of them could have had reason to think he intended to go upon the track, or that either of them failed to use all available means to avoid striking him.

TORT.   Writ in the Superior Court dated August 31, 1940. The action was tried before *Hudson,* J.

*W. F. A. Graham*, for the plaintiff.

*N. W. Deering*, for the defendants.

RONAN, J. The plaintiff recovered a verdict for the death of his intestate which occurred a little after four o'clock on the afternoon of September 1, 1939, when he was struck by a train as he was crossing the defendants' track in front of the Norfolk Downs station. The judge on leave reserved entered a verdict for the defendants, subject to the exception of the plaintiff. The judge then reported the case to this court under a stipulation that, if there was error in entering a verdict for the defendants, the verdict returned by the jury is to stand, otherwise the verdict for the defendants is to stand.

The station is located to the west of the westerly or southbound track, and between this track and the station is a platform built like a sidewalk, which extends northerly and southerly beyond the station itself and is used by passengers entering or leaving southbound trains. Opposite the station there is a similar platform adjacent to the easterly or inbound track. The distance between these two platforms is about twenty-two feet, and this space is occupied by these two tracks. A way known as Billings Road ends at the easterly edge of the easterly platform at a point about opposite the station. Several posts were erected at the end of the road in order to bar vehicles from the easterly platform. Two planked cross ways, each in line, if extended, with one of the sidewalks on Billings Road, cross both tracks to the westerly platform. The intestate was on the southerly crosswalk when he was struck by the train. In front of the station both sets of tracks are straight in either direction for a distance of over nine hundred feet. The intestate entered the railroad premises from Billings Road and proceeded to walk westerly across the easterly platform and the easterly or inbound track, and was crossing the westerly or outbound track when he was struck by the front of the locomotive of a passenger train which was running from Boston to Wood's Hole and was scheduled on the day of the accident to make its next stop at Brockton. It was

travelling at speeds variously estimated by witnesses as from thirty to fifty miles an hour. The weather was clear and pleasant. The train was in full view of anyone entering the railroad premises from Billings Road as soon as he reached the easterly platform and from the time the train appeared under the Squantum Street Bridge, which was over nine hundred feet to the north of the station. There was no evidence of any noise that would prevent one from hearing the approach of the train. There was testimony that the noise of the train was heard before the intestate left Billings Road. There was evidence that the bell on the locomotive was being rung by an automatic device from the time the train first appeared until after the accident. There was other evidence that the bell was not ringing before the accident but that a sharp whistle was sounded just before the accident. It appeared from a written statement of the engineer, who had died since the accident, that as he approached the station his attention was directed to some small boys who had placed pebbles on the westerly track and the engineer had signaled them away from the track, and that when he heard the fireman shout something, which he did not understand, he immediately applied the brakes and brought the train to a stop with the rear end a car, or a car and one half, length to the south of the place of the accident. The engineer did not see the intestate before the accident. The fireman did not testify. There is nothing in the record tending to show whether or not he was available as a witness.

The plaintiff testified that his father, the intestate, told him within an hour of the accident that he intended to take a train for Boston, although the plaintiff had previously stated in answer to the defendants' interrogatories that the intestate was on his way home when he was killed. The intestate was in fact going in the direction of his home when struck. The jury, however, found that the intestate was a passenger at the time of the accident. Even if we assume that he was a passenger, *McCarthy* v. *Boston, Revere Beach*

& *Lynn Railroad,* 262 Mass. 56; compare *Webster* v. *Fitchburg Railroad,* 161 Mass. 298, there can be no recovery unless his death was caused by the negligence of the railroad. *Cotter, petitioner,* 237 Mass. 68, 72. *Carlson* v. *Boston & Maine Railroad,* 269 Mass. 60.

An engineer and a fireman, observing an adult person who to all intents and purposes is obviously aware of the approach of the train and is proceeding toward a railroad track, are justified in believing that he will stop before reaching the track and that he will not take the risk of passing in front of the train; but upon the first manifestation that he contemplates taking that risk, an immediate duty rests upon the engineer and the fireman to take all reasonable measures to avert a collision. The intestate must have been a very short distance from the locomotive when it first became evident that he would attempt to cross in front of the train, as he was struck before he had cleared the westerly track. We do not know when the fireman first saw the intestate, but as soon as the intestate indicated that he was going to cross, the fireman shouted to the engineer, who is not shown to have failed to use all available means to avoid striking the intestate. It is also to be noted that the view of the engineer from his seat on the right of the cab is obstructed by the boiler and that there is an area to the left and forward of the locomotive which is not within his vision, and it has not been made to appear that the intestate was not in this dead spot when he indicated that he would attempt to cross in front of an onrushing locomotive only a short distance away. The case comes within those decisions holding that negligence of either the engineer or the fireman has not been shown. There was no error in entering a verdict for the defendants. *Savageau* v. *Boston & Maine Railroad,* 210 Mass. 164. *Hutchinson* v. *Boston & Maine Railroad,* 219 Mass. 389. *Gannett* v. *Boston & Maine Railroad,* 238 Mass. 125, 131. *Tamkun* v. *Boston & Maine Railroad,* 302 Mass. 59, 62. *Follett* v. *Boston & Maine Railroad,* 308 Mass. 553, 557. *Peterson* v. *Boston & Maine Railroad,* 310 Mass. 45. *Barakat*

v. *Trustees of New York, New Haven & Hartford Railroad*, 311 Mass. 496. *Horan* v. *Boston & Maine Railroad*, 184 Fed. 453.

In accordance with the terms of the report, the verdict entered in favor of the defendants is to stand.

*So ordered.*