MARJORIE E. POOLES, administratrix, *vs.* BOSTON AND
MAINE RAILROAD.

Middlesex.    November 5, 1951. — December 3, 1951.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Railroad,* Grade crossing. *Negligence,* Invited person, Licensee. *Wanton
or Reckless Conduct.*

Evidence respecting a country grade crossing of a railroad with a rough,
    gravel private road and the circumstances of a collision between a
    train and an automobile on the crossing showed at most that the
    operator of the automobile was using the crossing with mere passive
    acquiescence of the railroad company and was no more than a licensee
    thereon.

A finding of wanton or reckless conduct in the operation of a railroad
    train was not warranted by evidence of the circumstances of a collision
    between it and an automobile on a private grade crossing in the coun-
    try which the train had approached running express at a speed of
    sixty to seventy miles an hour.

TORT.    Writ in the Superior Court dated December 12,
1947.

The action was tried before *Rome,* J.    Verdicts for the
plaintiff on counts for death and property damage were re-
corded subject to leave reserved.    A motion by the defendant
to enter verdicts in its favor was denied.    The defendant
alleged exceptions.

*P. Brownell,* for the defendant.

*L. C. Sprague,* for the plaintiff.

RONAN, J.    The plaintiff's intestate was killed and his
automobile was demolished when the automobile which
he was driving was struck by a train about five o'clock on
the afternoon of February 3, 1947, while he was driving in
a southerly direction along Phelps Crossing, a private way
in Ayer.    The train was travelling in a westerly direction.
The jury returned verdicts for the death and property dam-
age.    The case is here upon the exception of the defendant

to the denial of its motion to enter verdicts for it under leave reserved.

Phelps Crossing was a short dead end way which ran in a southerly direction from its junction with a public way across five sets of tracks to some factories located to the south of the railroad. It was situated about seven hundred fifty feet west of the Ayer depot. It was about thirty feet wide near its northerly end where it crossed the tracks. It had been maintained and repaired for many years by the defendant. Planks had been laid next to the rails and the surface between the tracks consisted of some hard compound. The crossing had been in existence since 1845. It was used by persons going to or coming from the factories, but there was no evidence to show the actual extent of such use. There was evidence that the intestate at the time of the accident was going to one of these factories to apply for work in response to an advertisement for help by a chair company.

The train was running express along the westbound main line or the second most northerly track. It was proceeding at the rate of sixty to seventy miles an hour. It was not scheduled to stop and did not stop at the Ayer depot. There was evidence that, as the train was passing, or just after it passed, the depot, the automobile started to travel slowly over the crossing; that after it passed over the first set of tracks, it seemed to jump suddenly ahead onto the main track and in front of the train; that the engineer applied the brakes as soon as he saw the automobile come upon the crossing but that the train went three quarters of a mile before it stopped.

The intestate at the time of the accident was using the crossing for his own personal benefit and in furtherance of a purpose in which the defendant had no interest. No express invitation had been extended to him. Neither is there any evidence of any inducement or allurement held out to him by the defendant which would constitute an implied invitation. Photographs of the locus show a typical winding country crossing with a rough, ungraded, gravel road on each

side of the railroad location. The appearance of the surface of the space occupied by the tracks flanked on either side by such road was not sufficient to induce one to believe that he was invited to use the crossing. Besides, there was a sign north of the track and west of the crossing which read, "railroad crossing, private way, trespassing forbidden," although there was evidence that this sign was so badly weatherbeaten that it was hardly legible. Mere passive acquiescence by the defendant in the use made of the crossing by the public was not the equivalent of an implied invitation by the defendant. *McCarthy* v. *Boston & Maine Railroad*, 319 Mass. 470, 472. *Couto* v. *Trustees of New York, New Haven & Hartford Railroad*, 312 Mass. 23, 27.

The intestate might be considered to be an invitee of the chair company in seeking work at its factory in response to its advertisement, *Silva* v. *Henry & Close Co.* 279 Mass. 334, *Forgione* v. *Frankini Construction Co.* 308 Mass. 29; but there is lacking any evidence tending to show that the chair company had any right to use the crossing or that any use that it made of the crossing amounted to more than permission. *O'Brien* v. *Boston & Maine Railroad*, 325 Mass. 451, 455–456. The rights of the intestate to be upon the crossing arose no higher than those of a licensee, and the plaintiff could not recover without proof of wilful, wanton, or reckless conduct upon the part of the defendant. *O'Brien* v. *Union Freight Railroad*, 209 Mass. 449. *Partridge* v. *United Elastic Corp.* 288 Mass. 138, 144. There was no evidence of such conduct upon the part of the defendant. There was evidence that one approaching from the north, as the intestate was, the westbound main track could see three hundred yards to the east, which was the direction from which the train came, when he was sixteen feet from the main track. An engineer may properly assume that a traveller will not attempt to pass in front of a rapidly approaching train in the absence of any indications to the contrary. *Tamkun* v. *Boston & Maine Railroad*, 302 Mass. 59, 62. *Peterson* v. *Boston & Maine Railroad*, 310 Mass. 45, 54. *McNally* v. *Trustees of New York, New Haven & Hartford*

*Railroad,* 325 Mass. 367, 370. It has been frequently held that the running of an express train through open country at a rate somewhat similar to that at which the train was travelling in the instant case would not alone constitute negligence. *Tamkun* v. *Boston & Maine Railroad,* 302 Mass. 59, 62. *Dole* v. *Boston & Maine Railroad,* 308 Mass. 46, 48–49. *Follett* v. *Boston & Maine Railroad,* 308 Mass. 553, 557. *Southern Pacific Co.* v. *Stephens,* 24 Fed. (2d) 182, 184. *Markar* v. *New York, New Haven & Hartford Railroad,* 77 Fed. (2d) 282, 283. *Constantine* v. *Pennsylvania Railroad,* 114 Fed. (2d) 271. *Robins* v. *Pitcairn,* 124 Fed. (2d) 734.

In view of the conclusion we have reached we need not consider whether the intestate was contributorily negligent or whether he was proceeding in compliance with G. L. (Ter. Ed.) c. 90, § 15, as amended.

It follows that there was error in the denial of the defendant's motion. The exceptions are sustained and judgments must be entered for the defendant.

*So ordered.*