RICHARD BARTON & another *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Plymouth.   December 10, 1954. — March 4, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Negligence*, Railroad: operation of locomotive, grade crossing; Contributory; Grade crossing. *Railroad*, Grade crossing.

A finding of negligence on the part of the engineer of a railroad train in not having stopped the train before it collided with a motor truck stalled on a grade crossing was warranted by evidence that on a fair and clear winter afternoon with no snow on the tracks the fireman warned the engineer of the presence of the truck on the crossing when the train was about two hundred fifty feet from the crossing and proceeding at four to six miles per hour, that at five miles per hour the train could have been stopped "within ten or fifteen or twenty feet," and that the train was not brought to a stop until it had proceeded three hundred feet beyond the crossing.   [350]

Evidence would have warranted a finding that the operator of a delivery truck who drove it onto a railroad grade crossing when the traffic light there was green and he saw no train did all that could reasonably be done to avoid personal injuries and damage to the truck resulting from a train running into the truck after it had stalled on the crossing and the operator had attempted to get it going again, and did not require a ruling that as matter of law he was guilty of contributory negligence.   [350]

Barton *v*. New York, New Haven & Hartford Railroad.

TORT. Writ in the Superior Court dated September 20, 1950.

The action was tried before *O'Connell*, J.

*Noel W. Deering*, for the defendant.

*Philander S. Ratzkoff*, for the plaintiffs.

SPALDING, J. About 2:15 on the afternoon of January 15, 1949, a truck driven by the plaintiff Barton and owned by the plaintiff H. P. Hood & Sons, Inc., was run into by a locomotive owned and operated by the defendant at a grade crossing at North Scituate. As a result of the collision Barton sustained personal injuries and the truck of H. P. Hood & Sons, Inc., was damaged, and this action of tort is brought to recover for the personal injuries and property damage sustained respectively by each. The declaration originally contained six counts but we are concerned with only two, counts 2 and 5, which are based on the common law.[1] These counts were submitted to the jury and verdicts were returned for the plaintiffs, which were recorded under leave reserved. To the denial of its motion for directed verdicts at the close of the evidence and to the denial of its motion for the entry of verdicts in its favor under leave reserved, the defendant excepted. Both exceptions present the question whether the case was properly submitted to the jury. *Berwick & Smith Co.* v. *Salem Press, Inc.* 331 Mass. 196.

We summarize the pertinent evidence as follows: The accident happened on a clear day at a grade crossing on the defendant's track just north of the North Scituate railroad station. At this point three highways converge. Country Way intersects the crossing from the east if one comes from Cohasset. Just before the crossing on the east side is Gannett Road which comes in from the south. On the westerly side of the crossing Henry Turner Road comes in from the north. The Cohasset station is a little more than a mile north of the North Scituate station, and a south bound

---

[1] Counts 3 and 6 were waived, and counts 1 and 4, which alleged a failure to give the statutory signals (G. L. [Ter. Ed.] c. 160, §§ 138, 232), were submitted to the jury who returned verdicts for the defendant.

train coming from Boston would stop at the Cohasset station first.  The track of the defendant coming from Cohasset is roughly parallel to Country Way but just before it reaches the North Scituate station it curves to the left and crosses Country Way diagonally.  There are traffic lights on the east and west sides of the track on Country Way which also serve as railway signals.  These are the usual red, green, and yellow signals, but when a train approaches the crossing it actuates a circuit which is located 2,135 feet up the track and all the lights "come on red."

On the day of the accident the plaintiff Barton, hereinafter called the plaintiff, was employed by H. P. Hood & Sons, Inc., as a "retail foreman."  One of his duties was to substitute for "other drivers" on their days off, and at the time of the accident he was driving a delivery truck as a substitute for the regular operator.  Immediately prior to the accident he was proceeding west on Country Way toward the crossing.  He had been over this crossing six or seven times prior to the accident.  As he approached the crossing he noticed a stop sign and a traffic light on Country Way.  Although at that time the traffic light was green, the plaintiff stopped at the stop sign and looked to his right and to his left.  Seeing nothing, he started up and when his truck reached the first rail of the track the motor stalled.  Up to this time the traffic signal was still green.  He tried to "jump the clutch" in order to get the motor going but "It didn't jump."  (On three prior occasions that day the motor had stalled and each time he was able to get it going again by "jumping the clutch.")  While the truck was thus stalled on the first rail the plaintiff noticed that the lights had turned red, but did not realize that this indicated that a train was approaching.  He tried to "jump the clutch again" but it did not jump.  He glanced around and saw a locomotive about one hundred feet away.  He was "glued to . . . [his] truck" and "horrified."  When he "gained consciousness or something" he tried to open the left hand door of the truck.  "He saw the train and in a split second he was flying in the air."  He does not remem-

ber whether he got the door open before the crash. "He was on the crossing about sixty seconds before the train came along." The left hand front corner of the locomotive collided with the right side of the truck and pushed it a distance of about three hundred feet. When the truck came to rest it was "up against one of the uprights" on the platform of the North Scituate station.

The evidence relating to the operation and speed of the train immediately prior to the accident came from the defendant's engineer and fireman. The locomotive involved in the accident was approximately seventy feet long. At the time it collided with the truck it was proceeding on a scheduled run which called for a stop at the North Scituate station. The engineer sat on the right hand side of the cab and the fireman sat on the left. From where the engineer sat the boiler or front part of the engine extends out thirty-eight or thirty-nine feet. As the train approached the crossing just prior to the accident the bell, which was operated automatically, was ringing, and "the regular crossing whistle" was sounded.[1] As the engine rounded the curve to the left, which was north of the crossing, the engineer, because of the boiler, had no view of the crossing. There was a point where the fireman on the left side of the cab would have a clear view of the crossing; that would be where the curve straightens out. The first knowledge that the engineer had that there was a truck on the crossing was when the fireman shouted a warning. At that time the engine was going around the curve and was proceeding at a speed of between eighteen and nineteen miles per hour. The engineer put on the emergency brake. He was of opinion that, approaching the crossing at a speed of eighteen or nineteen miles an hour, under the conditions then obtaining, he could stop "in anywhere from three hundred to four hundred feet." Later the engineer testified that when the fireman spoke to him the engine was proceeding at not

---

[1] The plaintiffs do not contend that the statutory signals (G. L. [Ter. Ed.] c. 160, § 138) were not given. Moreover the verdicts of the jury on the counts alleging a failure to give these signals were in the defendant's favor.

over "four, five, or six miles an hour." "Going at five miles an hour, he could stop within ten or fifteen or twenty feet, something like that, with the same number of cars, equipment, with this engine, with the rails, sand, lack of snow and all the conditions that existed at the time of the accident."

The fireman testified that he was about two hundred fifty feet from the crossing when he observed the truck "standing still" on the crossing and it was then that he "hollered to the engineer."

The common law counts with which we are here concerned allege negligence in the operation of the locomotive. The plaintiff contends that on the engineer's first version of how the accident happened it could have been found that the speed of the train (eighteen to nineteen miles per hour), in the circumstances, was excessive; if on the other hand the engineer's second version be adopted, namely, that when the fireman shouted to him, the train was proceeding at not over "four, five, or six miles an hour," then, it is argued, the jury could have found that the engineer was negligent in not having stopped the train in time to avoid the collision.

We are of opinion that the first of these alternatives would be a difficult proposition to maintain. From the description of the crossing and photographs which are before us, it can hardly be said that the crossing was located in a thickly settled district. We should hesitate to say that evidence that the train was proceeding over such a crossing at a speed of eighteen to nineteen miles an hour would warrant a finding of negligence. See *Gannett* v. *Boston & Maine Railroad*, 238 Mass. 125, 131; *MacLaren* v. *New York, New Haven & Hartford Railroad*, 252 Mass. 233, 235; *Mannino* v. *Boston & Maine Railroad*, 300 Mass. 71; *Tamkun* v. *Boston & Maine Railroad*, 302 Mass. 59, 62; *Follett* v. *Boston & Maine Railroad*, 308 Mass. 553, 557. Compare *Hicks* v. *New York, New Haven & Hartford Railroad*, 164 Mass. 424, 426–427; *Clapp* v. *New York, New Haven & Hartford Railroad*, 229 Mass. 532, 536–537. But it is

not necessary to decide that question, for on the engineer's second version of how the accident happened we think there was a case for the jury.

According to that version the train was proceeding at a speed of four to six miles an hour when the engineer received the warning from the fireman. And he also testified that at five miles an hour, under the conditions then obtaining, he could stop the train "within ten or fifteen or twenty feet." The fireman testified that when he warned the engineer the locomotive was about two hundred fifty feet from the crossing. There was evidence that after the fireman's warning to the engineer the train was not brought to a stop until it had proceeded three hundred feet beyond the crossing or a total of five hundred fifty feet from the point where the truck was first observed. Considering the facts that the day was fair and clear and there was no snow on the track, we think the jury could have found that there was negligence on the part of the engineer in not having stopped the train before it collided with the truck. See O'Brien v. Boston & Maine Railroad, 330 Mass. 347, 350. The case was for the jury to decide "if anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff. If any such combination of circumstances could be found it is, for present purposes, immaterial how many other combinations could have been found which would have led to conclusions adverse to the plaintiff." Kelly v. Railway Express Agency, Inc. 315 Mass. 301, 302.

It cannot be said that the plaintiff was guilty as matter of law of contributory negligence. According to his testimony the traffic signals were green when he drove the truck onto the crossing. That he did not succeed in crossing was due to the fact that the motor stalled, or at least the jury could have so found. It could have been found that the plaintiff did all that could reasonably be done to extricate himself from the imminent peril in which he found himself. In such an emergency the law does not require one to take the most

prudent course that could have been taken. *Rollins* v. *Boston & Maine Railroad,* 321 Mass. 586, 589. *Holmes* v. *New York Central Railroad,* 330 Mass. 155, 160.

*Exceptions overruled.*